IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JASZMANN ESPINOSA, and STEPHANIE          )
ALVERIO, and all persons similarly situated,   )        Case No. 1:13-cv-24565-UU
                                          )
        Plaintiffs,                       )
                                          )
v.                                        )
                                          )
RICK'S CABARET INTERNATIONAL,             )
INC., RCI MANAGEMENT SERVICES,            )
INC., ERIC LANGAN, and ED ANAKAR,         )
                                          )
        Defendants.                       )

**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE
PROCEEDINGS, TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTIES,
TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION,
<u>AND TO STAY DISCOVERY PENDING DETERMINATION OF THE MOTION</u>**

Jeffrey A. Kimmel
jak@msf-law.com
*Admitted Pro Hac Vice*
Racquel C. Weintraub
rcw@msf-law.com
*Admitted Pro Hac Vice*
Meister Seelig & Fein LLP
2 Grand Central Tower
140 E. 45th St., 19th Floor
New York, NY 10017
Telephone: (212) 655-3500
Facsimile: (212) 655-3535

Aaron Resnick
AARON R. RESNICK, ESQ.
Florida Bar No. 141097
Law Offices of Aaron Resnick, P.A.
100 North Biscayne Boulevard, Suite 1607
Miami, Fl 33132
Tel: 305-672-7495
Fax: 305-672-7496
Email: Aresnick@thefirmmiami.com
Secondary Email: efile@thefirmmiami.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

PROCEDURAL BACKGROUND ............................................................................ 5

ARGUMENT ............................................................................................................ 6

    I.   ARBITRATION MUST BE COMPELLED AND THE CASE DISMISSED
         BECAUSE PLAINTIFFS EXPRESSLY AGREED TO ARBITRATE THE
         CLAIMS THEY RAISE HERE ................................................................ 6

     A. All of Plaintiff's Claims, Whether Pursuant to FLSA or State Law, Are Arbitrable ....... 7

     B. In Any Event, the Arbitration Agreements are Not Unconcionable ........................8

    II.  PLAINTIFFS' FAILURE TO JOIN INDISPENSABLE PARTIES REQUIRES
         DISMISSAL OF THE COMPLAINT ................................................... 11

     A. The Non-Party Clubs are "Necessary" ................................................... 12

       1. Rule 19(a)(1)(B)(i) ................................................................... 12

       2. Rule 19(a)(1)(A) ...................................................................... 13

     B. The Non-Party Clubs Cannot Feasibly Be Joined Because the Proper, Agreed-Upon
        Venue is Arbitration, and the Court is Without Personal Jurisdiction Over Onyx .......... 13

       1. Arbitration is the Proper Venue for the Non-Party Clubs ........................... 13

       2. The Court Lacks Personal Jurisdiction Over Onyx, a Philadelphia Club ................ 14

     C. Based on Equitable Considerations, This Action Should Be Dismissed ...................... 15

       1. The Non-Party Clubs, As Well As the Named Defendants, Will Be Prejudiced If The
         Non-Party Clubs Are Not Joined ............................................................15

       2. There Is No Way To Shape Relief In This Action In Such A Way As To Avoid
         Prejudice To Either The Absent Or Present Parties ........................................16

       3. Any Judgment Herein Without the Non-Party Clubs Would Be Inadequate ..........17

       4. Dismissal Will Not Prejudice Plaintiffs ...................................................18

i

III.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE
        PENNSYLVANIA-BASED CLAIMS CONCERNING ALVERIO, ONYX,
        AND THE PENNSYLVANIA MINIMUM WAGE ACT ............................................... 17

IV.     DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF THIS
        MOTION……………………………………………………………………....19

CONCLUSION....................................................................................................................... .20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amerijet Int'l, Inc. v. Miami-Dade Cnty., Fla.*,
No. 12-22304-CIV, 2014 WL 866406 (S.D. Fla. Mar. 5, 2014)..........................................18-19

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740, (2011) .................................................................................................... 7

*Bocciolone v. Solowsky*,
No. 08-20200, 2008 WL 2906719 (S.D. Fla. July 24, 2008)................................................ 19

*Caley v. Gulfstream Aerospace Corp.*,
428 F.3d 1359 (11th Cir. 2005)............................................................................... *passim*

*Cellularvision Tech. & Telecomm., L.P. v. Cellco P'ship*,
No. 06-60666-CIV, 2006 WL 2871858 (S.D. Fla. Sept. 12, 2006) ......................................... 19

*Clinton v. Babbitt*,
180 F.3d 1081 (9th Cir. 1999)................................................................................................. 12

*Cohen v. Office Depot, Inc.*,
204 F.3d 1069 (11th Cir. 2000)........................................................................................ 3 n.5

*CompuCredit Corp. v. Greenwood*,
132 S. Ct. 665 (2012) ................................................................................................................ 7

*De Asencio v. Tyson Foods, Inc.*,
342 F.3d 301 (3d Cir. 2003).................................................................................................... 18

*Delgado v. de Ona*,
No. 11-21143-CIV, 2012 WL 1792630 (S.D. Fla. May 15, 2012) ......................................... 17

*Dunn v. Standard Bank London Ltd.*,
No. 05 CIV.2749(DLC), 2006 WL 217799 (S.D.N.Y. Jan. 30, 2006) .................................... 13

*Fernandez v. Clear Channel Broad., Inc.*,
268 F. Supp. 2d 1365 (S.D. Fla. 2003)..................................................................................... 9

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) ................................................................................................................. 10

*Gubanova v. Miami Beach Owner, LLC*,
No. 12-22319-CIV, 2013 WL 6229142 (S.D. Fla. Dec. 2, 2013)........................................... 14

*Hamlett v. Owners Advantage, LLC*,
No. 13-80416-CIV, 2013 WL 4711165 (S.D. Fla. Aug. 30, 2013) ...................................... 7, 9

*Hart v. Rick's Cabaret Int'l Inc.*,
  No. 09 Civ. 3043(JGK) (S.D.N.Y. Mar. 30, 2009) ...................................... 4, 4 n.6, 10

*Integrated Sec. Servs. v. Skidata, Inc.*,
  609 F. Supp. 2d 1323 (S.D. Fla. 2009) ............................................................ 7, 11

*Kaplan Indus., Inc. v. Oaktree Capital Mgmt., LP*,
  11-CV-22064-UU, 2011 WL 5578976 (S.D. Fla. Aug. 18, 2011) ......................... 3 n.5

*Klein v. Marriott Int'l, Inc.*,
  34 F. Supp. 2d 176 (S.D.N.Y. 1999) .................................................................. 13

*Lyalls v. Kauff's, Inc.*,
  07-80161 CIV, 2007 WL 2320590 (S.D. Fla. Aug. 10, 2007) .................................. 10

*Maldonado v. Mattress Firm, Inc.*,
  No. 8:13-CV-292-T-33 (AEP), 2013 WL 2407086 (M.D. Fla. June 3, 2013) .................... 3 n.5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) .................................................................................. 6- 7

*MS Dealer Serv. Corp. v. Franklin*,
  177 F.3d 942 (11th Cir.1999) ........................................................................ 3 n.5

*Nankivil v. Lockheed Martin Corp.*,
  216 F.R.D. 689 (M.D. Fla. 2003) *aff'd*, 87 F. App'x 713 (11th Cir. 2003) .............................. 19

*Ortiz v. Celebrity Cruises Inc.*,
  No. 08-20561-CIV, 2009 WL 3413880 (S.D. Fla. Oct. 22, 2009) ............................................ 14

*Senior Servs. of Palm Beach LLC v. ABCSP Inc.*,
  12-80226-CIV, 2012 WL 2054971 (S.D. Fla. June 7, 2012) .................................................. 11

*Spear Grp., Inc. v. Fla. Power & Light Co.*,
  No. 13-80534-CIV, 2014 WL 272724 (S.D. Fla. Jan. 23, 2014) ................................. 12, 13, 15

*Stevenson v. Great Am. Dream, Inc.*,
  No. 1:12-CV-3359-TWT, 2014 WL 186101 (N.D. Ga. Jan. 16, 2014) ................................ 9, 11

*Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*,
  432 F.3d 1327 (11th Cir. 2005) ....................................................................... 9

*Travelers Indem. Co. v. Household Intern., Inc.*,
  775 F. Supp. 518 (D. Conn. 1991) ................................................................... 12

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715, 86 S. Ct. 1130 (1966) ........................................................................ 19

*Varga v. Palm Beach Capital Mgmt., LLC*,
   No. 09-82398-CIV, 2010 WL 8510622 (S.D. Fla. Sept. 3, 2010) ...................................... 19, 20

*Velasco v. XTC Cabaret, Inc.*,
   No. H-12-3295(LHR) (S.D. Tx. Nov. 6, 2012) ............................................................. 9, 9 n.7

*Webster Bus. Credit Corp. v. Henricks Jewelry, Inc.*,
   No. 2:07-CV-601-FTM-29(DNF), 2008 WL 2222203 (M.D. Fla. May 27, 2008) ........... 13, 14

## <u>Statutes</u>

9 U.S.C. § 2, 4 ......................................................................................................... 1, 6

28 U.S.C. § 1367 *et seq.* ......................................................................................... 17, 18

29 U.S.C. § 201 *et seq.* ............................................................................................. 9

Fla. Stat. § 48.193 ..................................................................................................... 15

## <u>Rules</u>

Fed. R. Civ. P. 12(b) *et seq.* ................................................................................ *passim*

Fed. R. Civ. P. 19(a) *et seq.* ................................................................................ *passim*

Defendants Rick's Cabaret International, Inc. ("RCII"), RCI Management Services, Inc. ("RCIM"), Eric Langan ("Langan"), and Ed Anakar ("Anakar," and together with RCII, RCIM, and Langan, the "Defendants"), by and through undersigned counsel, move, pursuant to Rules 12(b)(1), (2), (3), (6) and (7) of the Federal Rules of Civil Procedure ("FRCP"), and pursuant to Sections 2 and 4 of the Federal Arbitration Act ("FAA"), to compel arbitration of the First Amended Complaint filed February 28, 2014 (the "Complaint," ECF No. 25) by Jaszmann Espinosa ("Espinosa")[1] and Stephanie Alverio ("Alverio," and together with Espinosa, the "Plaintiffs") and to dismiss the proceedings; to dismiss the Complaint for failure to join indispensable parties Miami Gardens Square One, Inc. d/b/a Tootsie's Cabaret ("Tootsie's") and The End Zone, Inc. d/b/a Club Onyx ("Onyx," and together with Onyx, the "Non-Party Clubs"); to dismiss for lack of subject matter jurisdiction; and to stay discovery pending determination of this motion.[2]

In support of this motion, Defendants submit herewith the Declaration of Ed Anakar ("Anakar Decl.") and the Declaration of Jeffrey Kimmel ("Kimmel Decl.").

## PRELIMINARY STATEMENT

The facts set forth in the Complaint and the agreements attached thereto require that the Court compel separate arbitrations for the named Plaintiffs in accordance with the terms of their separate, different, and binding arbitration agreements with clubs owned and operated by RCII's subsidiaries.

Plaintiff Espinosa, a putative New York resident (Complaint ¶ 9), is an adult entertainer who — before ever performing at Tootsie's in Miami — entered into an independent contractor

---

[1]   Espinosa's surname is spelled "Espino*z*a" in her signed independent contractor agreement and individual consent form, but we defer to Plaintiffs' spelling.

[2]   This motion addresses the Complaint's deficiencies with regard to jurisdiction, venue, and joinder. Defendants reserve the right to seek dismissal on substantive grounds.

agreement with Tootsie's dated October 29, 2009 (the "Espinosa Agreement").[3]  The Espinosa Agreement contains a simple "**ARBITRATION ADDENDUM,**" which Espinosa and Tootsie's entertainment director signed and dated, containing the parties' explicit agreement that "any employment claim, dispute or controversy … shall be submitted to binding arbitration" in "accordance with the Rules of the American Arbitration Association."  *See* Complaint, Exh. 4 ("Arbitration Addendum" as an excerpt of the Espinosa Agreement) (emphasis in original); *see* Anakar Decl., Exh. A (entire Espinosa Agreement) at p. 3 of 10.

Plaintiff Alverio, a putative resident of the Commonwealth of Pennsylvania (Complaint ¶ 10), is an adult entertainer who — prior to performing at Onyx in Philadelphia, entered into a licensor/licensee agreement with Onyx dated July 2, 2010 (the "Alverio Agreement," and together the Espinosa Agreement, "Plaintiffs' Agreements").[4]  The Alverio Agreement provides that "any disputes" thereunder are to be determined by "an impartial independent appointed by the American Arbitration Association, Pennsylvania branch," applying Pennsylvania law and the "commercial arbitration rules of the American Arbitration Association," and that "[t]he place of arbitration shall be Philadelphia County, Pennsylvania."  *See* Complaint, Exh. 5 (Alverio Agreement) at § 15.   Alverio further expressly agreed to "**WAIVE ANY RIGHT TO LITIGATE SUCH CONTROVERSIES … IN A COURT OF LAW**" and to "**WAIVE[] ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION** …"  (Emphasis in original.)  *Id.*  Alverio initialed the page containing these waivers, which was the final page of the Alverio Agreement.

---

[3]    Plaintiffs allege that Espinosa began working for Tootsie's on "approximately October 30, 2009."  Complaint ¶ 9.

[4]    Plaintiffs allege that Alverio began working for Onyx in "approximately July, 2010."  Complaint ¶ 10.

Plaintiffs now seek to form two subclasses, one based on Espinosa's claims relating to Tootsie's in Florida, and one based on Alverio's claims relating to Onyx in Pennsylvania (Complaint ¶¶ 15-16), under the incorrect theory — disproved by the difference in form of their agreements alone — that "all entertainers at RCII clubs performed the precise same job duties and were subject to identical terms and conditions of employment." *Id.* at ¶ 2.

Given the clear and unambiguous arbitration agreements entered into by the Plaintiffs prior to their work at the Non-Party Clubs (and, in the case of Alverio, her explicit waiver of "any right to participate in any class action or collective action"), this Court is not the right forum for Plaintiffs' Fair Labor Standards Act ("FLSA") and state law claims.  Pursuant to the FAA, arbitration must be compelled in order to enforce Plaintiffs' Agreements.[5]  As set forth below, even Plaintiffs' baseless claims that their agreements are somehow "unconscionable" are within the province of, and must be determined by, the arbitrators.

The Complaint must also be dismissed for failure to join the Non-Party Clubs as parties. Without naming them, Plaintiffs seek to render the Non-Party Clubs' agreements "unconscionable and unenforceable" (Complaint ¶ 161) and to obtain "mandatory injunctive relief" with respect to the Non-Party Clubs (*id.*, ¶¶ 187(d), 188(d)).  Instead, Plaintiffs have named as Defendants two entities and two individuals with whom they have no personal or

---

[5]     Although Defendants are not signatories to Plaintiffs' Agreements, Defendants may compel arbitration thereunder on the basis of equitable estoppel because: (1) Plaintiffs' claims against Defendants arise from, rely on, and relate to the terms and conditions of Plaintiffs' Agreements (*see, e.g.,* Complaint ¶¶ 3, 73, 169, 183, 193), and (2) Plaintiffs allege "substantially interdependent and concerted misconduct" by Defendants and the Non-Party Clubs (*see, e.g., id.* at ¶¶ 3, 73, 82-83, 94, 97).  *Kaplan Indus., Inc. v. Oaktree Capital Mgmt., LP*, 11-CV-22064-UU, 2011 WL 5578976 (S.D. Fla. Aug. 18, 2011) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir.1999), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072–73 (11th Cir. 2000)); *see Maldonado v. Mattress Firm, Inc.*, No. 8:13-CV-292-T-33 (AEP), 2013 WL 2407086 (M.D. Fla. June 3, 2013) (granting non-signatory's motion to compel arbitration of FLSA claims and thereafter closing the case).

3

contractual relationship whatsoever.  The Non-Party Clubs are indispensable parties without which this action cannot proceed.  If arbitration is not compelled (and the proceedings not dismissed together therewith), the Complaint must be dismissed due to their glaring absence.

The Complaint must also be dismissed because this Court should not exercise subject matter jurisdiction over — and has no interest in — a dispute between Alverio (a putative Pennsylvania resident) and Onyx, a Pennsylvania corporation that does no business in Florida.

Discovery should be stayed for a brief period while the Court considers the Complaint's threshold issues concerning jurisdiction, venue, and joinder.

Finally, the Complaint repeatedly refers to a pending class action against RCII in the United States District Court for the Southern District of New York, *Hart v. Rick's Cabaret Int'l Inc.*, No. 09 Civ. 3043(JGK) (S.D.N.Y. Mar. 30, 2009) (the "Hart Action"), which was commenced in 2009 and has no bearing on the Plaintiffs' Agreements.  As set forth in the accompanying Anakar Decl. (at ¶ 5), Tootsie's use of the arbitration provision in the Espinosa Agreement *pre-dated* the commencement of the Hart Action by at least one year, making truly preposterous Plaintiffs' claim that the arbitration provision "was motivated by, and was a direct response to" the Hart Action.   Complaint ¶ 160.   Furthermore, when Alverio signed her agreement, the Hart Action was (and continues to be) only a New York-certified action — *i.e.*, not a nationwide class action.[6]  On December 17, 2009, the court in the Hart Action dismissed RCII from the case, leaving only New York entities.  *See id.*, Exh. 2 (Hart Action docket) at Docket Entry #79.  The plaintiffs amended their complaint on May 28, 2010 to name RCII again. *See id.* at Docket Entry #153.  On July 8, 2011, plaintiffs confirmed that they were not pursuing nationwide collective certification, and thus no claims regarding clubs other than the New York

---

[6]     The Hart Action was conditionally certified as a New York collective on December 17, 2009.  *See* Kimmel Decl. ¶ 14.

club.  *See* Kimmel Decl., Exh. F.  In any event, Plaintiffs in this action both agreed to arbitrate prior to commencing work at the Non-Party Clubs, meaning that: (a) they were not "potential members" of a class when they entered into their agreements any more than any other member of the general public who was not already an entertainer at one of the clubs, and (b) they were not threatened with *termination* if they did not agree to arbitrate.  It is absurd for Plaintiffs to contend that, prior to signing Plaintiffs' Agreements, they "were told that they would not be permitted to *continue working* unless they signed the 'agreement' or agreed to its terms."  Complaint ¶ 159 (emphasis added).

## PROCEDURAL BACKGROUND

Plaintiffs commenced the within action against defendants RCII and Langan on or about December 19, 2013 by filing a complaint alleging that those Defendants violated certain wage and hour laws under with respect to the named Plaintiffs who performed at the Non-Party Clubs.

On or about January 30, 2014, RCII and Langan's counsel, Jeffrey A. Kimmel ("Kimmel"), informed Plaintiffs' counsel, Harlan S. Miller, III ("Miller"), that Plaintiffs had signed agreements to arbitrate their disputes with Tootsie's and Onyx.  *See* Kimmel Decl. ¶ 2. Kimmel provided the relevant arbitration provisions to Miller on January 30 and February 4.

On February 3, Miller sent by email to Kimmel and Defendants' other counsel, Aaron Resnick, "a DRAFT Amended Complaint to be filed after the passage the 15 day period specified in Sec. 448.110(6)(1)" (*i.e.*, the Florida Minimum Wage Act).  *See* Kimmel Decl. ¶ 3 and Exh. A.  Miller wrote: "As you can see, I have decided to pursue the Onyx claims in a separate suit to be filed in PA, which will leave only the 'Tootsie's' claims pending the SDFLA." *Id.*  Miller named Tootsie's as a defendant in the draft complaint.

On February 5, Miller wrote to Kimmel that based upon the arbitration provision signed by Espinosa, "we would likely agree to collective arbitration of the claims arising from the Tootsie's operation." *See* Kimmel Decl. ¶ 8 and Exh. B. The next day, with regard to the Alverio matter, Miller was more definite, writing that "I will not file another suit in Pennsylvania if arbitration was in fact agreed to by the parties. If it was, we will demand arbitration and proceed in that forum." *See* Kimmel Decl. ¶ 9 and Exh. C.

However, Miller reversed course and filed the 219-paragraph First Amended Complaint — adding Florida and Pennsylvania Minimum Wage Law claims, and defendants RCIM and Anakar, while failing to name either of the Non-Party Clubs (even though Tootsie's had been named in the draft complaint Miller provided on February 3). Miller did not discontinue Alverio's Pennsylvania-based claims, as he had suggested he would do on February 3. Plaintiffs have not contested that they signed the agreements.

By Order dated March 3, 2014, Defendants were ordered to respond to the Complaint by March 14, 2014 (ECF No. 28). The parties have filed a "Proposed Joint Planning and Scheduling Report" dated February 21, 2014 (ECF No. 20), which provides a proposed discovery schedule. Plaintiffs have not yet moved to certify this action as a collective action.

## **ARGUMENT**

I.     **ARBITRATION MUST BE COMPELLED
       AND THE CASE DISMISSED BECAUSE PLAINTIFFS
       EXPRESSLY AGREED TO ARBITRATE THE CLAIMS THEY RAISE HERE**

The Federal Arbitration Act provides that pre-dispute arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has recognized a "liberal federal policy favoring arbitration agreements" (*Mitsubishi Motors Corp. v. Soler Chrysler-*

*Plymouth, Inc.*, 473 U.S. 614 (1985)), and has explained that "[t]he overarching purpose of the FAA … is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748, (2011). The FAA thus "requires that courts enforce arbitration agreements according to their terms … even when federal statutory claims are at issue, unless the FAA's mandate has been overridden by a contrary congressional command." *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 667 (2012) (internal quotation marks omitted). The Eleventh Circuit has recognized that the "federal policy favoring arbitration … is taken into consideration even in applying ordinary state law." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). "[A]s a result of well-established federal policy favoring arbitration, the burden is on the party opposing arbitration to prove to the court that arbitration is improper." *Hamlett v. Owners Advantage, LLC*, No. 13-80416-CIV, 2013 WL 4711165, at *2 (S.D. Fla. Aug. 30, 2013).

**A.      All of Plaintiff's Claims, Whether Pursuant to FLSA or State Law, Are Arbitrable**

"In reviewing a motion to compel arbitration, a district court must consider three factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived." *Integrated Sec. Servs. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1324 (S.D. Fla. 2009) (compelling arbitration and dismissing action).

Plaintiffs do not contest the second and third factors, and do not contest that they entered into written agreements to arbitrate. However, they challenge circumstances under which they agreed to do so. As set forth below, the validity of the arbitration agreements is to be determined by the arbitrators.

The arbitration provisions of Plaintiffs' Agreements are different, but both are broad in scope and require application of the same AAA rules. The Alverio Agreement expressly

provides:  "The parties agree that this Agreement is subject to binding arbitration pursuant to the Federal Arbitration Act ('FAA'), and any disputes under this Agreement will be governed and settled by an impartial independent appointed by the American Arbitration Association, Pennsylvania branch …"  Complaint, Exh. 5 at § 15 (emphasis in original).  The parties agreed that "*the arbitrator shall apply the commercial arbitration rules of the American Arbitration Association* and Title 9 of the U.S. Code, except to the extent that such rules conflict with the provisions of this Section 15 in which event the provisions of this Section 15 shall control."  *Id.* (emphasis added).  AAA's Commercial Arbitration Rules and Mediation Procedures provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  *See* Kimmel Decl., Exh. D, at R-7(a).

The Espinosa Agreement's arbitration provision is terser, but provides that:

> *Any controversy or claim arising out of or relating to this tenant (Independent Contractor) Agreement*, hereinafter referred to as "Agreement", or breach of the Agreement, *shall be settled by binding arbitration in accordance with the Rules of the American Arbitration Association*, and judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction.  For the purpose of this addendum, *any employment claim, dispute, or controversy*, including discrimination*, shall be submitted to binding arbitration*.

(Emphasis added.)  *See* Complaint, Exh. 4.  The arbitration provision does not specify which AAA rules are to apply, but the AAA's Commercial Arbitration Rules provide:  "The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided … for arbitration by the AAA of a domestic commercial dispute without specifying particular rules."  *See* Kimmel Decl., Exh. D at R-1(a); *see also Id.*  Exh. E (AAA's *Employment* Arbitration Rules expressly "do not apply to disputes arising out of … independent contractor agreements," such as the Espinosa Agreement).

8

The arbitrators thus have the authority to decide the scope of their own jurisdiction and the scope of the arbitration agreements. *See Id.* at R-7. Florida courts have found that "[w]hen parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Hamlett*, 2013 WL 4711165, at *2 (citing *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) 2005).

Finally, it bears notice that the claims set forth in the Complaint are routinely arbitrated. *See Caley*, 428 F.3d 1359 (affirming district court's rulings granting motions to compel arbitration of FLSA claims and to dismiss); *Fernandez v. Clear Channel Broad., Inc.*, 268 F. Supp. 2d 1365, 1366 (S.D. Fla. 2003) (granting motion to compel arbitration of action alleging, among other things, FLSA violations); *Hamlett*, 2013 WL 4711165. In a January 2014 decision addressing similar facts, the Northern District of Georgia dismissed an action brought by adult entertainers at Pin Ups Nightclub in Decatur, who sought "damages for violation of the minimum wage and overtime wage requirements of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (FLSA)." *Stevenson v. Great Am. Dream, Inc.*, No. 1:12-CV-3359-TWT, 2014 WL 186101, at *1 (N.D. Ga. Jan. 16, 2014), *motion for reconsideration denied*, Feb. 24, 2014 (*Stevenson*, ECF No. 99).

In *Velasco v. XTC Cabaret, Inc.*, No. H-12-3295(LHR) (S.D. Tx. Nov. 6, 2012) (the "Velasco Action"), an action brought by adult entertainers alleging FLSA claims against various Texas clubs and RCII, the court granted the defendants' motion to dismiss and compel arbitration. *See* Kimmel Decl., Exh. G (Velasco Action ECF No. 27).[7]

---

[7]      *See* Kimmel Decl. ¶ 18 (arbitration provision at issue in the Velasco Action was identical to the one in Alverio's agreement, save for references to arbitration in Texas rather than in Pennsylvania). The Velasco Action court also held that a threshold "equitable tolling" issue was

B.      **In Any Event, the Arbitration Agreements are Not Unconscionable**

The Court does not have to determine whether Plaintiffs' Agreements are unconscionable, because that falls within the purview of the arbitrators.  Yet, in any event, Plaintiffs cannot, under the facts they have plead, demonstrate unconscionability.

"Under Florida law, in order to invalidate an arbitration clause, the court must find that it is both procedurally and substantively unconscionable."  *Lyalls v. Kauff's, Inc.*, 07-80161 CIV, 2007 WL 2320590, at *1 (S.D. Fla. Aug. 10, 2007) (compelling arbitration in FLSA action). "Procedural unconscionability relates to the manner in which the contract was entered and involves such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms."  *Id.*   "Mere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements [are unenforceable]." *Caley*, 428 F.3d at 1377 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)).

Plaintiffs claim that they were somehow coerced into signing the agreements, having been told, by unnamed persons, that even though they had not yet worked for the Non-Party Clubs, "they would not be permitted *to continue working* unless they signed the 'agreement' or agreed to its terms …"  Complaint ¶ 159 (emphasis added).  Plaintiffs further claim that the "the sole purpose" of the arbitration agreements was to "intimidat[e] potential class members and prevent them from pursuing their FLSA rights in the Hart action" (*id.* at ¶ 162), even though Plaintiffs do not contend they were even aware of the Hart Action.  According to Plaintiffs, the agreements are thus "unconscionable and unenforceable" *(id.* at ¶ 161) and even somehow "constituted an impermissible communication with potential opt-in members of the Hart Nationwide FLSA collective action … and is unenforceable for that reason as well." *Id.* at ¶ 163.

_____

"one for the arbitrator, not the court, to determine."  *See* Kimmel Decl., Exh. H (Velasco Action ECF No. 26).

Plaintiffs do not allege that the bargaining power between the parties was any different from that of the ordinary workplace or independent contractor services agreement. *See Stevenson*, 2014 WL 186101, at *3 ("the bargaining disparity inherent in any employer-employee relationship is not sufficient to render an arbitration agreement unconscionable") (citing *Caley*, 428 F.3d at 1377). Accordingly, arbitration should be compelled and the proceedings should be dismissed.[8] *See, e.g., Senior Servs. of Palm Beach LLC v. ABCSP Inc.*, 12-80226-CIV, 2012 WL 2054971 (S.D. Fla. June 7, 2012) ("[A]s all claims in this action are subject to arbitration, the Court will dismiss the case rather than stay it."); *Integrated Sec. Servs.*, 609 F. Supp. 2d at 1327 ("The Plaintiff is hereby DIRECTED to proceed to arbitrate this dispute in New Jersey as mandated by the Agreement. The instant action is hereby DISMISSED. The Clerk shall CLOSE this case.").

## II.   PLAINTIFFS' FAILURE TO JOIN INDISPENSABLE PARTIES REQUIRES DISMISSAL OF THE COMPLAINT

Pursuant to FRCP 12(b)(7), a complaint is subject to dismissal if it fails to join indispensable parties under Rule 19. A party is "necessary" if "in that person's absence, the court cannot accord complete relief among existing parties" (FRCP 19(a)(1)(A)), or if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may … as a practical matter impair or impede the person's ability to protect the interest" (Rule 19(a)(1)(B)(i)).

---

[8]     With regard to substantive unconscionability, the *Stevenson* court found "no warrant or explanation" for the argument that the arbitration agreement "unjustifiably protect[ed] the Defendants" where the agreement "require[d] *both* parties to arbitrate covered claims." 2014 WL 186101, at *3 (citing *Caley*, 428 F.3d at 1377) (emphasis in original). Similarly, claimed "interfere[nce] with the Plaintiff's right to proceed as part of a collective action" did not render the agreement unconscionable; "the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer simplicity, informality, and expedition." *Id.* (quoting *Caley*, 428 F.3d at 1378 (internal quotation marks omitted)).

11

Tootsie's and Onyx are the only entities with which Plaintiffs have any relationship relevant to this dispute.  Yet without naming them as parties, Plaintiffs now seek to have the Court construe the terms and conditions of Plaintiffs' work at, and agreements with, the Non-Party Clubs, and order "mandatory injunctive relief" against them.  *See* Complaint ¶¶ 187(d), 188(d)).  The Non-Party Clubs thus satisfy both Rules 19(a)(1)(A) and 19(a)(1)(B)(i), each of which independently establish that they are necessary to this action.  Their omission from the Complaint is intentional and glaring, and this action cannot proceed in their absence.

A.     **The Non-Party Clubs are "Necessary"**

1.      **Rule 19(a)(1)(B)(i)**

Rule 19(a)(1)(B)(i) deems a party "necessary" if that party will be prejudiced by non-joinder.  Courts have recognized that a "contracting party is the paradigm of an indispensable party." *Spear Grp., Inc. v. Fla. Power & Light Co.*, No. 13-80534-CIV, 2014 WL 272724, at *4 (S.D. Fla. Jan. 23, 2014) (citing *Travelers Indem. Co. v. Household Intern., Inc.*, 775 F. Supp. 518 (D. Conn. 1991) "[A] district court cannot adjudicate an attack on the terms of a negotiated agreement without jurisdiction over the parties to that agreement." *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999).  Any decision in this case will obviously affect the rights of the Non-Party Clubs because Plaintiffs seek to modify the terms and conditions of their agreements and render the arbitration provisions "unenforceable" (Complaint ¶ 161) — all without affording them their day in Court.  The Non-Party Clubs are thus necessary parties under 19(a)(1)(B)(i).

Simply naming RCII and RCIM as defendants is not sufficient to prevent prejudice to the Non-Party Clubs.  In an action involving a resort in Bermuda "managed, operated and controlled by Marriott Services" — a non-party that was a wholly-owned subsidiary of defendant Marriott International — the court dismissed the action for failure to join the subsidiary.  The court held

that the subsidiary, "against whom the majority of allegations are directed, has the greatest interest in defending against these lawsuits and would be substantially prejudiced were any judgments to be entered in its absence." *Klein v. Marriott Int'l, Inc.*, 34 F. Supp. 2d 176, 180 (S.D.N.Y. 1999). This is the precise situation here.

### 2.   Rule 19(a)(1)(A)

A party is "necessary" under Rule 19(a)(1)(A) if "its absence will prevent the court from granting complete relief to the existing parties." *Spear*, 2014 WL 272724, at *2. In an action arising out of a contractual relationship, "it is difficult to see how plaintiffs could be accorded complete relief if the sole named party with which they contracted is absent from the action." *Dunn v. Standard Bank London Ltd.*, No. 05 CIV.2749(DLC), 2006 WL 217799, at *4 (S.D.N.Y. Jan. 30, 2006).

In the event that this Court determines that RCII and RCIM are not the "employers" of the entertainers (as Defendants believe it will), there will no longer be an entity in this action from which the putative collective members will be able to obtain relief.

**B.   The Non-Party Clubs Cannot Feasibly Be Joined Because the Proper, Agreed-Upon Venue is Arbitration, and the Court is Without Personal Jurisdiction Over Onyx**

Under Rule 19, "[f]irst, the court determines whether a party should be joined. If so, the court asks whether joinder is feasible." *Webster Bus. Credit Corp. v. Henricks Jewelry, Inc.*, No. 2:07-CV-601-FTM-29(DNF), 2008 WL 2222203 (M.D. Fla. May 27, 2008).

### 1.   Arbitration is the Proper Venue for the Non-Party Clubs

Here, even though the Non-Party Clubs are necessary parties under Rule 19(a), they cannot feasibly be joined because, as set forth above, they both have clear contractual rights to arbitrate any employment-related disputes with the Plaintiffs, making this venue improper. *See*

*Ortiz v. Celebrity Cruises Inc.*, No. 08-20561-CIV, 2009 WL 3413880 (S.D. Fla. Oct. 22, 2009) (dismissing complaint for improper venue and compelling arbitration agreed to by parties).

Additionally, with regard to the Pennsylvania-based claims, Alverio explicitly "**WAIVE[D] ANY RIGHT TO LITIGATE … IN A COURT OF LAW**," and "**SPECIFICALLY WAIVE[D] ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLECTIVE ACTION**." *See* Complaint, Exh. 5 at § 15. Alverio Agreement at ¶ 15 (emphasis in the original).

It is evident that Plaintiffs' inability to join the Non-Party Clubs is a problem of their own making, as they are asking this Court to assist them in making an impermissible end-run around the arbitration agreements. It is simply not feasible to join a party where its rights can only be properly adjudicated in another forum. *See Webster Bus. Credit Corp.*, 2008 WL 2222203, at *2 (dismissing complaint for failure to join indispensable party: "Because of the automatic bankruptcy stay, Luxury cannot be made a party to this case…. The one court which can adequately and effectively resolve the competing claims to this money is the bankruptcy court in the pending proceedings regarding Luxury …").

### 2.   The Court Lacks Personal Jurisdiction Over Onyx, a Philadelphia Club

Plaintiffs have no basis to assert personal jurisdiction over Onyx, a Pennsylvania corporation, meaning that even aside from Alverio's agreement to resolve disputes with Onyx in arbitration, it is not feasible to make Onyx a defendant. "In order to determine whether a district court has personal jurisdiction over non-resident defendants," the court must first "determine[] whether the Florida long-arm statute provides a basis for jurisdiction." *Gubanova v. Miami Beach Owner, LLC*, No. 12-22319-CIV, 2013 WL 6229142, at *3 (S.D. Fla. Dec. 2, 2013). "The plaintiff has the burden of establishing personal jurisdiction over a non-resident defendant." *Id.*

Here, the Plaintiffs have not alleged — and cannot properly allege — that Onyx would be subject to personal jurisdiction in Florida.[9]  Indeed, jurisdiction could not be obtained under Florida's longarm statute, Fla. Stat. § 48.193, because among other things, Onyx does not conduct business in Florida.  *See* Anakar Decl., ¶ 8.  With no jurisdiction over a necessary and indispensable party, the complaint must be dismissed pursuant to Rule 12(b)(7).

## C.    Based on Equitable Considerations, This Action Should Be Dismissed

Once a party is determined to be necessary, a court must then determine if that party is "indispensable" pursuant to Rule 19(b).  *Spear,* 2014 WL 272724, at *4.  The factors to be considered by courts as delineated in Rule 19(b) are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by [ ] protective provisions in the judgment[,] shaping the relief[,] or other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

The Court's determination of whether a party is "indispensable" pursuant to Rule 19(b) is an equitable one left to the court's discretion, to be analyzed "on a case-by-case basis."  *Spear,* 2014 WL 272724, at *4.

### 1.    The Non-Party Clubs, As Well As the Named Defendants, Will Be Prejudiced If The Non-Party Clubs Are Not Joined

The prejudice to the non-parties "closely parallels" the analysis as to whether the Non-Party Clubs are necessary parties pursuant to Rule 19(a).  *Spear,* 2014 WL 272724, at *4.  The Non-Party Clubs were parties to the agreements providing the terms and conditions at issue, and a favorable ruling for Plaintiffs would have a tremendously adverse impact on them.  Not only

---

[9]    Plaintiffs cannot claim as to Onyx, as they do of the Defendants, that it "is frequently present in Florida to transact business, and in fact, transacts substantial business within the State of Florida."  Complaint ¶ 24.

would it result in potential liability for the Non-Party Clubs, but also impact (and potentially render unenforceable) the terms and conditions of their agreements with other performers. Furthermore, while any rulings of the Court in this case in the absence of the Non-Party Clubs may not constitute *res judicata* against them, Plaintiffs might still assert collateral estoppel with respect to this Court's rulings on FLSA and minimum wage law issues in any subsequent action that may be brought against the Non-Party Clubs.  Additionally, the named Defendants will be prejudiced by having claims brought against them that are to be arbitrated pursuant to the agreements between Plaintiffs and the Non-Party Clubs.

### 2. There Is No Way To Shape Relief In This Action In Such A Way As To Avoid Prejudice To Either The Absent Or Present Parties

There is no way to avoid the prejudice that will result from the absence of the Non-Party Clubs because Plaintiffs' claims pertain to the policies and practices at the clubs, which issues Plaintiffs and the Non-Party Clubs agreed would be addressed in arbitration, not in court.

### 3. Any Judgment Herein Without the Non-Party Clubs Would Be Inadequate

Even a judgment in Defendants' favor in this case would be inadequate as it would likely lead to subsequent litigation in which the Non-Party Clubs will be named as defendants in court in the venues in which they each operate.  Moreover, if the Plaintiffs are victorious it is questionable as to whether such a judgment can be enforced as against the Non-Party Clubs, particularly in regard to Onyx, a Pennsylvania corporation that does not do business in Florida.

### 4. Dismissal Will Not Prejudice Plaintiffs

The named Plaintiffs will not be prejudiced by dismissal of this action because discovery has not yet begun, a judgment on the merits is not imminent, and they have an adequate remedy in the arbitral forums in which they expressly agreed to determine employment-related claims.

Accordingly, this action should be dismissed pursuant to Rule 12(b)(7) for failure to join

the Non-Party Clubs as necessary and indispensable parties.

## III.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE PENNSYLVANIA-BASED CLAIMS CONCERNING ALVERIO, ONYX,  AND THE PENNSYLVANIA MINIMUM WAGE ACT

Even if the Court does not compel arbitration or dismiss the Complaint for failure to join indispensable parties, the Court should decline to exercise supplemental jurisdiction over the Pennsylvania-based claims, which arise from Alverio's work at Onyx in Philadelphia and under the Pennsylvania Minimum Wage Act of 1968.  Alverio's claims derive from facts that are separate and distinct from those concerning Espinosa, who worked at Tootsie's in Miami under different management and conditions, and under a different agreement.  The Court has no interest in adjudicating claims between two Pennsylvania-based parties, much less a claim under the Pennsylvania Minimum Wage Act.

28 U.S.C. § 1367 provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  "The Eleventh Circuit has noted that the constitutional 'case or controversy' standard confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim."  *Delgado v. de Ona*, No. 11-21143-CIV, 2012 WL 1792630, at *2 (S.D. Fla. May 15, 2012).

Pursuant to 28 U.S.C. § 1367(c), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if -- (1) the claim raises a novel or complex issue of State law, … [or] (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Citing 28 U.S.C. § 1367(c)(1), the Third Circuit held that a *Pennsylvania* federal court improperly exercised supplemental jurisdiction over state law claims (under the Pennsylvania Wage Payment and Collection Law) accompanying a FLSA claim.  *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003)2003).  The Third Circuit reasoned that "Pennsylvania courts have not addressed two novel and complex questions of state law squarely presented here" and that "[t]he need to resolve these issues, which are better left to the Pennsylvania state courts, weighs in favor of declining supplemental jurisdiction.  *Id.* .  Here — in the Eleventh Circuit — it is even clearer that issues concerning Pennsylvania's Minimum Wage Act are best left to the Pennsylvania state courts, particularly where the Plaintiff asserting claims thereunder is not a Florida citizen and seeks, among other things, declaratory relief against a club in Philadelphia.

Pursuant to 28 U.S.C. § 1367(c)(4), there are both "exceptional circumstances" and "other compelling reasons for declining jurisdiction" over Alverio and her claims arising from her work at Onyx.  Alverio's claims stem solely from her work in Philadelphia for a Pennsylvania corporation, pursuant to an agreement entered into Pennsylvania and governed by Pennsylvania law.  Alverio thus seeks relief "to remedy violations of Pennsylvania law, including but not limited to" relief under the Pennsylvania Minimum Wage Act of 1968 …" *See, e.g.,* Complaint ¶ 8.  Count IV of the Complaint specifically asserts claims under that act. *Id.*, ¶¶ 207-209.  Alverio thus has no basis for seeking relief from this Court.  Alverio's express agreement to arbitrate disputes in Pennsylvania, pursuant to Pennsylvania law, is a further circumstance compelling the Court to decline jurisdiction.

The Southern District of Florida recently quoted the Supreme Court in noting that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right, and hence the power need not be exercised in every case in which it is found to exist."  *Amerijet Int'l, Inc. v. Miami-Dade*

*Cnty., Fla.*, No. 12-22304-CIV, 2014 WL 866406, at *10 (S.D. Fla. Mar. 5, 2014) (quoting *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 86 S. Ct. 1130 (1966)).  This Court has also held that it has "no interest in adjudicating a dispute between two companies headquartered elsewhere, concerning a dispute centered elsewhere."  *See, e.g., Cellularvision Tech. & Telecomm., L.P. v. Cellco P'ship*, No. 06-60666-CIV, 2006 WL 2871858, at *4 (S.D. Fla. Sept. 12, 2006).  The same philosophy applies here.

By characterizing this action as on behalf of a putative FLSA collective with Florida and Pennsylvania members, Plaintiffs are attempting an end-run around the personal jurisdiction requirements of this Court.  Realizing that they cannot ask a court to assert personal jurisdiction over Onyx, but evidently not wanting to commit the resources necessary to bring arbitration in Pennsylvania, Plaintiffs have chosen to pursue relief against Onyx without naming it.  However, Plaintiffs' attempt to adjudicate the rights of Onyx without its participation must fail because, as set forth above, Onyx is a necessary and indispensable party to this action.

## IV.    DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF THIS MOTION

Courts in this district have held that "[a] stay of discovery is appropriate where the movant shows 'good cause and reasonableness.'" *Varga v. Palm Beach Capital Mgmt., LLC*, No. 09-82398-CIV, 2010 WL 8510622 (S.D. Fla. Sept. 3, 2010)) (quoting *Bocciolone v. Solowsky*, No. 08–20200, 2008 WL 2906719, at *2 (S.D. Fla. July 24, 2008)).  "[C]ourts have held good cause to stay discovery exists wherein resolution of a preliminary motion may dispose of the entire action."  *Varga*, 2010 WL 8510622 (quoting *Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 692 (M.D. Fla. 2003) *aff'd,* 87 F. App'x 713 (11th Cir. 2003)2003)).

Here, a short stay of discovery pending resolution of the instant motion is appropriate given that it not only seeks to dispose of the entire action, but goes to the Court's standing to

19

hear claims that Plaintiffs agreed to arbitrate. *See Varga* ("The venue and standing issues are threshold legal issues that are case-dispositive.  It is appropriate to stay discovery pending resolution of a motion to dismiss where such an issue is raised.").

## CONCLUSION

For all the reasons set forth above, and in the accompanying Anakar and Kimmel Declarations and the exhibits annexed thereto, the Court should compel arbitration and dismiss the proceedings; dismiss the Complaint for failure to join indispensable parties; dismiss the Complaint for lack of subject matter jurisdiction; and stay discovery pending determination of this motion.

Dated:  March 14, 2014

                                                     Respectfully Submitted,

                                                     _____/s/Aaron Resnick_____
Aaron Resnick, Esq.
**Florida Bar No. 141097**
**Law Offices of Aaron Resnick, P.A.**
New World Tower
100 North Biscayne Boulevard
Suite 1607
Miami, FL 33132
Telephone: (305) 672-7495
aresnick@thefirmmiami.com
efile@thefirmmiami.com
Attorneys for Defendants

**Meister Seelig & Fein LLP**
2 Grand Central Tower
140 East 45th Street, 19th Floor
New York, New York 10017
Tel (212) 655-3500
Fax (212) 655-3535
Jeffrey A. Kimmel, Esq.
(Of Counsel-*admitted pro hac vice*)
Racquel C. Weintraub, Esq.
(Of Counsel-*admitted pro hac vice*)

**CERTIFICATE OF GOOD FAITH CONFERENCE;**
**CONFERRED BUT UNABLE TO RESOLVE ISSUES PRESENTED IN THE MOTION**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that Jeffrey A. Kimmel, counsel for the movant-Defendants, conferred with Harlan S. Miller, III, Esq., counsel for Plaintiffs, and with all non-parties who may be affected by the relief sought in the instant motion in a good faith effort to resolve the issues raised herein.   As no agreement could be reached, this motion is presented to the Court for determination.

_____/s/ Jeffrey A. Kimmel_____
Jeffrey A. Kimmel, Esq.
*Admitted pro hac vice*


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 14, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

By:        _____/s/Aaron Resnick_____
           AARON R. RESNICK, ESQ.
           Florida Bar No. 141097
           Law Offices of Aaron Resnick, P.A.
           100 North Biscayne Boulevard, Suite 1607
           Miami, Fl 33132
           Tel: 305-672-7495
           Fax: 305-672-7496
           Email: Aresnick@thefirmmiami.com
           Secondary Email: efile@thefirmmiami.com

22